## Charles E. Capps *et al.*

### *v.*

## Montgomery Hickman, Guardian, etc.

*Filed at Mt. Vernon February 3, 1881.*

1. Will—*when portions are rendered inoperative.* Where a testator, in the mercantile business with two of his sons, by his will directed that his two sons should continue the business until his youngest child should attain his majority, unless it should prove unprofitable, in which event the goods should be sold and the proceeds loaned, etc., and also that the widow should be paid annually a certain sum of money, and the testator sold out his interest in the business to his two sons before his death, and the widow renounced the provisions of the will, it was held that these subsequent facts rendered such provisions of the will inoperative.

2. Same—*when executors are made trustees for minor children, not bound to pay over to statutory guardian.* A testator, by his will, appointed two of his sons executors, and directed and empowered them to sell all real and personal property belonging to the estate, except the homestead and household goods devised to his widow for life, and use the proceeds for the payment of legacies and for the support and education of the minor children, and also provided that the executors should hold the estate in trust, except as otherwise provided, until the youngest child should become of age, and further declared: "I will that my executors pay out of my estate annually a sum which, together with that provided in section third hereof, is sufficient to clothe, educate and support my minor children until they become of lawful age:" *Held,* that the executors were made trustees of the estate, and, in effect, testamentary guardians of the minors, with the duty to clothe, educate and support them, and that while faithfully discharging such duty, the court had no rightful power or authority to require the executors to pay over any moneys to the statutory guardian of such minors for their support and education.

Appeal from the Appellate Court for the Fourth District; —heard in that court on error to the Circuit Court of Fayette county; the Hon. W. R. Welch, Judge, presiding.

This was an application, by Montgomery Hickman, to the probate court of Fayette county, asking that over $9000 be paid to him as guardian of the minor heirs of E. Capps, deceased, for the support and maintenance of the minors.

On appeal to the circuit court, that court rendered judgment against the appellants, who took the case to the Appellate Court for the Fourth District by writ of error, where the judgment of the circuit court was affirmed. The executors prosecute this appeal to reverse the judgment of affirmance.

Mr. EDWIN M. ASHCRAFT, for the appellants:

The questions presented to this court for decision in this case are:

1. Is the fund set apart in the will of Ebenezer Capps, for the support and education of his minor children, a trust fund in the hands of his executors?

2. By the will of Ebenezer Capps, are the executors or testamentary trustees clothed with the duty of disbursing and paying out this fund. for the support and education of his minor children, or should it be paid to the guardian to be by him disbursed for the minors?

The appellants are, by the will, testamentary trustees of his estate, and clothed with the duty of disbursing such fund for the support, education and maintenance of his minor children; and the placing of any part of this fund in the hands of any other person is in violation of its provisions.

In this case, so far as this fund is concerned, the executors are testamentary trustees, and the minors are the *cestuis que trust.*

The *cestui que trust* has no remedy except in a court of equity. *Miller's case,* Freem. 283; *Witter* v. *Witter,* 3 P. Wms. 102; *King* v. *Jenkins,* 3 Dow. & R. 41; *Edwards* v. *Graves,* Hob. 265; *Farrington* v. *Knightly,* 1 P. Wms. 149; *Vanderstegen* v. *Witham,* 6 M. & W. 457; *Bond* v. *Nurse,* 10 Q. B. 244; *Edwards* v. *Lowndes,* 1 E. & B. 81; *Drake* v. *Pywall,* 1 H. & C. 78; *Sturt* v. *Mellish,* 2 Atk. 612; *Allen* v. *Imlet,* Holt. 641; *Holland's case,* Styl. 41; *Queen* v. *Orton,* 14 Q. B. 139.

"In whatever way, or for whatever purpose, or in whatever form, trusts arise under wills, they are exclusively

within the jurisdiction of courts of equity." Story's Equity Jurisprudence, vol. 2, sec. 1058, p. 278.

Courts of probate have no jurisdiction of estates held by executors who are testamentary trustees. The jurisdiction in chancery is exclusive. *Billingsly* v. *Harris,* 17 Ala. 214.

The surrogate court has no power over a trustee. *Andrews' case,* 1 Johns. Ch. 99.

The orphans' court has no jurisdiction to call the trustee of a minor's property into court, and compel him to appropriate part of it to the minor's maintenance and education. *Pott's case,* 1 Ashem, (Pa.) 340.

، The settlement of the accounts of a testamentary trustee is a matter of equity jurisdiction, and does not belong to courts of probate, nor is it given to them by law. *Parsons* v. *Lyman,* 32 Conn. 566.

Messrs. Henry & Farmer, for the appellee:

In order to a clearer understanding of the legal effect of this will of Ebenezer Capps, a few facts must be kept constantly in view.

The first is, that all the property and business out of which was to come the support for the wife and children mentioned in sections four and seven of the said will, were disposed of and parted with by the said Ebenezer Capps after he made the said will, and prior to his death, the legal effect of which was to render nugatory and be a revocation of the will *pro tanto,* or those portions of it resting or depending upon the business or means mentioned in those sections. This is a proposition so evident that it would scarcely require a citation of authorities; but we refer the court to Jarman on Wills, (5th Am. ed.) vol. 1, p. 308, etc.; 4 Kent, (9th ed.) pp. 623, 624 and 625,—notes and authorities there cited.

The second fact to be noted is, that Elizabeth Capps, widow of Ebenezer Capps, renounced the provisions made for her in said will, thereby virtually rendering null and void the third and tenth sections of the said will.

Now, read the will with the third, fourth, seventh and tenth sections left out, and see what you have left. It is simply a widow with her rights, such as the statute gives her, and no other provision made for the maintenance of the minor children, save that made in section eleven of the will, and no one having any testamentary right to the care or custody of their persons or their means. . Under such circumstances, what reason can be urged why the court of probate of Fayette county should not or could not appoint a guardian, especially when their natural guardian, their mother, requests it? And, after he is appointed, is it not his duty to look after the education and maintenance of his wards? That being his duty, is it not his right to have the means set apart by their father's will, for that purpose? The will says it shall be annually paid by the executors. Paid to whom? To their guardian of course. No other person has the right to have it paid to him.

We understand the general principle of law, both in this country and in England, to be that where an executor is also appointed trustee for the holding and payment of specific legacies, for investing funds and holding them for distributees or legatees, his office of executor does not end, nor his office of trustee begin, until he has settled an account in the probate court, and has set apart and invested the fund, and given bond as trustee. Until that is done, the estate is still liable for the legacy, the securities on his executor's bond are still liable, and he is still subject to the orders of the probate court as executor. See Perry on Trusts, sec. 574; *Dorr* v. *Wainwright*, 13 Pick. 388; *Pryor* v. *Talbot*, 10 Cush. 1; *Brown* v. *Kelsey*, 2 id. 248.

By the provisions of section 18, 19 and 20 of article 6 of the constitution of 1870, and the laws enacted thereunder, it seems to us clear that the judge of probate in the State of Illinois has original jurisdiction in all that class of cases, and we should think it would extend even to the trust fund, after

the executor has qualified as trustee.   See sec. 114 of chap. 3, Rev. Stat. 1874, entitled "Administration of Estates."

As to the character of the jurisdiction of county courts, see *Probst* v. *Meadows*, 13 Ill. 157; *Reynolds* v. *The People*, 55 id. 128.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The decision of the questions presented by the record depend, mainly, upon the construction to be placed upon the will of the deceased, Ebenezer Capps.   The third clause of the will reads as follows:

" *Third.*—It is my desire that, after my death, my beloved wife shall continue to reside at my present homestead, and that my minor children shall reside with her as long as they desire or until they attain their majority; and that they be kindly treated," etc.

It further provides, that the wife may have the homestead and furniture therein during her natural life, or so long as she resides upon the premises, for the use of herself and the three minor children, George, Susan and Rosa Capps, until they attain their majority.

At the time the will was written, the testator was engaged in the mercantile business with his two sons, under the firm name of E. Capps & Sons, who were named as executors in the will.   The fourth clause of the will declared:

" *Fourth.*—It is my will, that the amount I may have invested in the mercantile firm of E. Capps & Sons at the time of my death, shall remain so invested, and be and remain under the absolute control of my sons Charles and Thomas Capps, until the youngest child becomes of lawful age, and that the net profits of said investment be paid annually to my said wife, for her support and for the support and education of my minor children: *Provided*, that if, at any time, my executors may deem it for the best interests of the estate, or the business proves unprofitable, they are authorized to withdraw such investment, and are directed to loan

28—97 ILL.

the money so withdrawn at the highest legal rate of interest, and pay the interest annually to my said wife, for her support and for the support of the said minor children during their minority."

The fifth clause of the will directs the executors to sell the testator's personal property, except the household goods. The sixth and seventh clauses of the will declared:

"*Sixth.*—I give and bequeath to my beloved daughter, Hannah Jenks, the sum of $1600; to my beloved daughter, Sarah Jerauld, the sum of $1000; and to my beloved daughter, Mary Williams, the sum of $3000; each and all of them to be paid by my executors within one year after my death. And I give and bequeath to my beloved son, George B. Capps, the sum of $10,000, to be paid to him by my executors when he arrives at the age of twenty-one years; to my beloved daughter, Rosa Capps, the sum of $3000, and to my beloved daughter, Susan Capps, the sum of $3000, to be paid to each of them when they arrive at the age of eighteen years, respectively.

"*Seventh.*—It is my desire that my business be carried on after my death, so far as practicable, in the same manner as it is now conducted; and, therefore, my executors, hereinafter named and appointed, are hereby invested with the absolute control and disposal of my estate, both real and personal, (except my homestead and household goods, as is provided in the third section hereof,) until my youngest child becomes of age, and my estate is fully settled and distributed, as herein provided; and they are hereby authorized, directed and empowered, when they believe it to be for the best interest of my estate, to sell and convey any or all of my real estate in fee simple, and use the proceeds for the payment of legacies and bequests herein enumerated, for the support and education of my minor children until they become of age, and for making such improvements as they may deem for the best interest of the estate; and whatever amount of money may be in their hands at any time, which is not needed for

the support and education of my minor children, or other purposes herein enumerated, shall be loaned out by my executors, on good security, to be approved by them, at the highest legal rate of interest, and that the interest, and all rents and profits from my estate be collected and used by my executors, subject to the same directions as the rest of my estate."

The eighth clause declared:

"*Eighth.*—It is my will that my executors hold all my estate in trust, except as otherwise provided herein, until my youngest child becomes of age, and the estate is fully settled; and I hereby empower and authorize them to sell and transfer any or all my real estate at private sale, when they believe it is for the best interest of the estate, hereby giving them full power and authority to make and execute good and sufficient deed or deeds therefor, give bonds for deeds, if they desire, until deferred payments are made, and to take such security as they may deem sufficient to secure deferred payments."

The ninth clause of the will directs the executors to pay certain amounts to his sister and step-daughter. The tenth directs the executor to pay the widow $400 annually, for her support and maintenance, until the youngest child becomes of age.

The eleventh and twelfth provisions were as follows:

"*Eleventh.*—I will that my executors pay out of my estate annually, a sum which, together with that provided in section third hereof, is sufficient to clothe, educate and support my minor children until they become of lawful age.

"*Twelfth.*—It is my will, that when my youngest child becomes of lawful age, then all my real and personal property, not otherwise disposed of, shall be sold at private sale, and whatever amount of money remains in the hands of my executors, after paying all the legacies and annuities herein provided, and all costs, commissions and fees are deducted, be divided equally among all my children, viz: Sarah Jerauld,

Hannah Jenks, Mary Williams, Charles Capps, Thomas Capps, Rosa Capps, George B. Capps and Susan Capps; and if any of my children die before receiving the legacies herein bequeathed, or before the estate is distributed, I desire the share of each child or children to descend in accordance with the laws of descent in this State."

The thirteenth clause requires the executors to give bond, and the fourteenth and last clause names the executors.

The testator, before his death, sold his interest in the store to his two sons, and the widow renounced the provisions of the will, after it had been admitted to probate, and elected to take under the statute.

The sale made by the testator in his lifetime of the interest he had in the mercantile firm of E. Capps & Sons, of course left that part of the sixth clause of the will, which relates to the continuance of the business and payment of the net profits to the widow, inoperative, and when the widow renounced the provisions of the will, the renunciation, in effect, left the tenth clause of the will inoperative, and every other clause which provided for the payment of money to her for her own use. But, notwithstanding the renunciation, and also the fact that the testator sold, before his death, all interest in the mercantile business, the main features of the will remained as it was written.

The two defendants, Charles and Thomas Capps, are, by the terms of the will, made executors, and they are also made trustees, clothed with the power of expending a portion of the estate for the support and education of the minor children of the testator. A mere reference to the provisions of the will is enough to demonstrate that the executors are to be regarded as trustees, in the management and disbursement of the estate. Under the seventh clause, they are directed and empowered to sell all real and personal property belonging to the estate, and use the proceeds for the payment of legacies, and for the support and education of the minor

children.   The eighth clause of the will, in express terms, directs and declares, that the executors shall hold the estate in trust, except as is otherwise provided, until the youngest child becomes of age.   The intent of the testator is so manifest, from the language used, that there would seem to be no doubt in regard to the fact that his object was to establish the relation of trustee and *cestui que trust* between his executors and his minor children.   It was not even necessary that the testator should have used the word trust.   Hill on Trustees, page 101, says: "It is by no means necessary that the donee should be expressly directed to hold the property to certain uses, or in trust, or as trustee, although such terms, having a defined and technical meaning, are more usually, as well as more properly, employed.   It is one of the fixed rules of equitable construction, that there is no magic in particular words; and any expressions that show, unequivocally, the intention of the parties to create a trust, will have the same effect. It was said by Lord ELDON, that the word trust not being made use of, is a circumstance to be alluded to, but nothing more; and if the whole frame of the will creates a trust, for the particular purpose of satisfying which the estate is devised, the law is the same, though the word trust is not used." If, then, the executors were trustees, as well as executors, the question arises, what were their duties in relation to the minor children of the testator?   Were they required to pay money over to a guardian appointed by the court, to be by him disbursed, or was it made a part of their duty to pay out the money themselves?   The terms of the will answer the question.   In the eleventh clause, the testator declares: "I will that my executors pay out of my estate, annually, a sum, which, together with that provided in section third hereof, is sufficient to clothe, educate and support my minor children until they become of lawful age."

Under this provision of the will, it was no part of the duty of the executors to pay over to a guardian any sum of money whatever, but, on the other hand, they were required to pro-

vide the means to clothe, educate and support the minors in the same manner that a guardian would who had been appointed by a court, and who had in his hand moneys belonging to his wards which had to be paid out for the support and education of the wards. They were, in effect, testamentary guardians. The duty, which the will and the law imposed upon the executors, so far as is shown by this record, has been faithfully performed. The wants of the minors have been supplied by them whenever they have been called upon. The record shows no single instance where they have declined to respond when called on to supply any want of either of the minor children of the testator. Under such circumstances, we perceive no ground upon which the court could properly make an order requiring the executors to pay over any sum of money to the guardian. Had the testator intended that the money in the hands of the executors, which was appropriated for the support and education of the minors, should be by them paid over to a guardian to be by him disbursed, it is strange that the will contains no intimation in that direction. The testator, reposing confidence in the persons whom he selected as executors, saw proper to place his estate in their hands as trustees and testamentary guardians, a portion of which they are required annually to pay out to clothe, educate and support his three minor children, and, so long as they discharge the trust faithfully, as required by the terms of the will, courts have no right to interfere.

The judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings in conformity to this opinion.

*Judgment reversed.*

DICKEY, Ch. J.: I think the will makes the executors trustees of the body of his estate to hold that which ultimately is to go to the then minor children, until the time of distribution; but I do not think they were made by the will *guardians* of the minors. I think the guardian appointed by the

court should have the custody of the funds, to be paid out annually for the support and education of the minors, and the trustees have no authority to control the mode of applying this annuity from time to time.